UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA WYATT,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF BURLINGAME, et al.,<br><br>        Defendants. | Case No. 16-cv-02681-DMR<br><br>**ORDER RE DEFENDANT CITY OF BURLINGAME'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 29 |

Plaintiff Lisa Wyatt ("Plaintiff") brings this employment discrimination action against Defendants City of Burlingame ("City") and Amy Gettle ("Gettle") (collectively "Defendants"), asserting various federal and state law claims under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e ("Title VII"); the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"); and California's Fair Employment and Housing Act (FEHA), California Government Code section 12940 *et seq.* The City now moves for partial summary judgment on the grounds that Plaintiff failed to properly exhaust her administrative remedies. [Docket No. 29.] The court held a hearing on December 22, 2016. Having carefully considered the parties' submissions and oral argument, the court hereby **GRANTS IN PART** and **DENIES IN PART** the City's motion.

## I. REQUESTS FOR JUDICIAL NOTICE

The City requests that the court take judicial notice of various documents relating to Plaintiff's Department of Fair Employment and Housing ("DFEH") and Equal Employment Opportunity Commission ("EEOC") charges, including print outs from the DFEH's official website. Request for Judicial Notice ("RJN") at 4-5 [Docket No. 32]. Plaintiff does not oppose this request. Under Federal Rule of Evidence 201, the court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction or (2) capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts in this district have routinely taken judicial notice of documents in the EEOC and DFEH administrative records. *See Adetuyi v. City & Cty. of San Francisco*, 63 F. Supp. 3d 1073, 1080–81 (N.D. Cal. 2014) (taking judicial notice of EEOC Intake Questionnaire and DFEH Charge, and the DFEH right-to-sue letter in determining summary judgment); *Minor v. FedEx Office & Print Servs.*, Inc., 78 F. Supp. 3d 1021, 1027–28 (N.D. Cal. 2015) (taking judicial notice of DFEH administrative complaints). The court therefore grants the City's Request for Judicial Notice. [Docket No. 32].

The City also requests that this court take judicial notice of the complaint, Plaintiff's counsel's e-mail address, and Plaintiff's counsel's profile on State Bar of California's website. [Docket No. 39]. Since the complaint is already part of the record in this case, the court denies the request as unnecessary. As the court does not rely upon the other information in making its decision, the rest of the request is denied as moot.

## II. EVIDENTIARY OBJECTIONS

The City filed objections to the Declaration of Richard M. Rogers ("Rogers Decl.) and Plaintiff's declaration ("Wyatt Decl."). Objections [Docket No. 38] at 14-15. The court rules as follows.

With respect to the Rogers Declaration, the objection to ¶ 4 is overruled. Rogers's statements are based on personal knowledge. The objection to ¶ 5 is sustained. Rogers's statements about his personal experience with the EEOC and DFEH procedures lack adequate foundation to establish what the EEOC and DFEH procedures actually are.

With respect to the Wyatt Declaration, the objection to ¶ 3 on the grounds of Federal Rules of Evidence 1002 and 1003 is overruled. Plaintiff's statement that she received "corroboration" or confirmation from the EEOC that her EEOC charge was dual-filed is supported by the notice of the dual filing of her EEOC Charge and the DFEH right-to-sue notice (Ex. 2), and a letter from the EEOC confirming the dual-filing of her EEOC charge with the DFEH (Ex. 3). The objections to Plaintiff's statements in ¶¶ 5 and 7 are sustained. Plaintiff appears to be asserting that the absence of any statement from Valdez or Finnegan that Plaintiff had to amend her EEOC charge or file a

new charge establishes that she had no duty to file an amended or new charge. Since Plaintiff is asserting the absence of these statements for the truth of the matter, it constitutes inadmissible hearsay.

With respect to ¶ 6, the objection to Plaintiff's statement is overruled. Plaintiff has personal knowledge of what occurred on July 29, 2014 at the PERS office in San Jose, CA. However, the objection to statements made by unidentified staff persons in the San Jose PERS office regarding whether Plaintiff had to retire on July 29, 2014 is sustained. The statements are inadmissible hearsay because they are offered for their truth. The objection to Plaintiff's statement regarding her paperwork on the grounds of Federal Rules of Evidence 1002 and 1003 is overruled. While Exhibit 6 does not reflect the actual change of the date of her retirement from July 29, 2014 to August 1, 2014, it shows that Plaintiff started receiving retirement benefits on August 1, 2014, which appears to be what Plaintiff seeks to prove with this document.

The objection to Plaintiff's statement in ¶ 8 is sustained, as it contains inadmissible hearsay offered for the truth of the matter, i.e., that the EEOC was actually back logged. The objection to Plaintiff's summary of her conversations with DFEH staff members in ¶ 9 is sustained because it contains inadmissible hearsay.

## III.    FACTS & BACKGROUND

The following facts are undisputed, except as noted.

In her complaint, Plaintiff alleges that she was a clerical worker and library assistant who began her employment with the City in 1989. Compl. at ¶ 3. Plaintiff further alleges that she is a Caucasian female who has "mental and physical disabilities that interfere with her abilities to work and lift." Compl. at ¶¶ 3-5.

On September 9, 2013, Plaintiff filed an EEOC charge ("2013 EEOC Charge"). 2013 EEOC Charge (Ex. 1 to Compl.). The 2013 EEOC Charge was dual filed with the DFEH. The DFEH promptly issued a right-to-sue notice to Plaintiff, notifying her that "the EEOC is responsible for the processing of this complaint, and the DFEH will not be conducting an

investigation into this matter." DFEH Notice to Complainant and Respondent (Ex. 3 to Compl.)[1].

The 2013 EEOC Charge includes two checked boxes which indicate discrimination based on national origin and disability. The text of the charge states the following:

> I was hired by [the City] on or around 9/28/1989. My current job title is LA II. My immediate Supervisor is Amy Gettle (Japanese). I informed [the City] of my disability in or around 2006. During the last 300 days of my employment, I have been subjected to harassment by Ms. Gettle. For example in or around June 2013, Ms. Gettle made comments regarding my disability such as referring to me as "Kuru Kuru Pa" which is Japanese for "crazy" and/or insane. Ms. Gettle has also made disparaging comments to me such as "maybe you cannot tell time" and has mentioned that she is tired of accommodating my disability. Moreover, Ms. Gettle has made various comments related to World War II such as suggesting that "Americans were at fault" and about how American Soldiers were called "Gomer Pyles." In or around May 2013, I reported the harassment to my Human Resources department, to no avail.

2013 EEOC Charge (Ex. 1 to Compl.).

In the complaint, Plaintiff alleges that she went on medical leave for over a year because she suffered serious physical injuries to her shoulders due to Gettle's refusal to assign help for heaving lifting. Compl. at ¶¶ 10, 11. Plaintiff further alleges that she was released to return to work from her medical leave in July 2014. She asserts that upon her return, the City told her that the available clerical positions required a college degree. She claims that she was forced to retire in July 2014 because she did not possess the requisite qualification. Compl. at ¶¶ 11, 31-32.

Plaintiff wrote a letter on July 28, 2014 in which she gave the City notice of her resignation, effective the next day: "This is to notify the City of Burlingame of my intent to retire from my position with the Library effective July 29th, 2014. It is my intention to continue my health benefits plan under the state of California - CalPERS." July 28, 2014 letter from Plaintiff to Human Resources Dept. of the City (Ex. A to Loomis Decl.). The City received Plaintiff's letter of resignation on July 29, 2014. *Id.* Plaintiff had her exit interview that same day. Loomis Decl., ¶ 6; Separation Checklist (Ex. B to Loomis Decl.); *see also* The City's Personnel Action Form

---

[1] The notice informed Plaintiff that she had one year from the date of the notice to file a lawsuit under the FEHA, but that the one-year period would be tolled during the pendency of the EEOC's investigation of her charge. *Id.*

4

(Ex. D to Loomis Decl.) (reflecting July 29, 2014 as the date of Plaintiff's termination due to retirement).

According to Plaintiff, on May 21, 2015, Plaintiff spoke with Saul Valdez, the EEOC investigator assigned to investigate her 2013 EEOC Charge. Plaintiff claims that she told Valdez that the City had offered her three positions with a Bachelor's degree requirement, but had refused to waive the requirement, thus forcing her to retire. Wyatt Decl., ¶ 5. The EEOC case log contains a reference to a May 21, 2015 contact with Plaintiff: "Telecon w/[Complaining Party] re: status." The log does not provide any other details about the contact, but does note that Plaintiff's case was assigned to Saul Valdez that day. *See* EEOC Case Log and May 21, 2015 Letter from EEOC to Plaintiff (Exs. 4 and 5 to Wyatt Decl.).

On July 29, 2015, Plaintiff submitted an inquiry to the DFEH. July 29, 2015 Letter from DFEH to Plaintiff (Ex. B to Darmagnac Decl.). In the inquiry, Plaintiff stated that she believed that she was "denied reasonable accommodations, denied re-employment and was forced to retire" because of her "disability and in retaliation for filing [the 2013] EEOC Complaint." DFEH Summary of Actions at 170 (Ex. C to Darmagnac Decl.). *Id*.

On July 30, 2015, a DFEH staff member interviewed Plaintiff and prepared an administrative complaint, which was signed and verified by Plaintiff and filed that day. DFEH Summary of Actions at 172 (Ex. C to Darmagnac Decl.); DFEH Summary of Action at 172 (Ex. C to Darmagnac Decl.); 2015 DFEH Complaint (Ex. 4 to Compl.). The 2015 DFEH Complaint states the following:

1. I, Lisa Wyatt, allege that I was subjected to Discrimination by respondent, City of Burlingame due to one or more Fair Employment and Housing Act protected bases: Disability.

2. I was denied reasonable accommodation, denied re-employment and forced to retire. The most recent harm occurred on or around August 1, 2014.

3. My belief is based on the following: On July 30, 2014, I was denied reasonable accommodation, denied re-employment and forced to retire because of my disability and in retaliation for filing an EEOC complaint. In July 2013, I went out on medical leave of absence. In August 2013, I filed an EEOC complaint alleging hostile work environment. On July 1, 2014, I was released to return to work

without restrictions. On July 29, 2014 meeting with my employer, I was offered three positions with bachelor's degree requirements which they were aware that I do not possess and I was told to retire. On July 29, 2014, I was forced to file my retirement paperwork which would be effective on August 1, 2014. I believe my employer failed to engage me into interactive process to determine if there were other positions available that I was qualified to do.

2015 DFEH Complaint (Ex. 4 to Compl.).

In August 2015, Plaintiff received a letter from the EEOC stating that her 2013 EEOC Charge had been reassigned to Patricia Finnegan, a senior investigator. *See* August 21, 2015 Letter from EEOC to Plaintiff (Ex. 7 to Wyatt Decl.). According to Plaintiff, she contacted Finnegan around August 21, 2015, and told Finnegan that she had been forced to retire. Wyatt Decl., ¶ 7. The EEOC case log does not reflect an August 21, 2015 phone call. The entry for that date states "[r]eassigned to Patricia Finnegan. Sent letter to [Complaining Party]." *See* EEOC Case Log and August 21, 2015 Letter from EEOC to Plaintiff (Exs. 4 and 7 to Wyatt Decl.).

On October 6, 2015, the DFEH issued a Right to Sue Notice to Plaintiff for her 2015 DFEH Complaint. DFEH Right to Sue Letter (Exs. D and E to Darmagnac Decl.). The DFEH advised Plaintiff that her DFEH Complaint was "**not dual filed** with" the EEOC, and that in order to obtain a federal right-tosue notice, Plaintiff had to file her EEOC complaint within "30 days of the receipt of this letter or within 300 days of the alleged discriminatory act, whichever is earlier." *Id.* (emphasis in original).

On March 1, 2016, the EEOC issued Plaintiff a right to sue letter for the 2013 EEOC Charge, notifying her that she had 90 days from receipt of the letter to file a lawsuit based on the charge. March 1, 2016 Letter from EEOC to Plaintiff (Ex. 2 to Compl.).

**IV.   PROCEDURAL HISTORY**

On May 18, 2016, Plaintiff filed her lawsuit against Defendants, alleging the following eleven claims for relief: 1) national original discrimination under Title VII; 2) national origin discrimination under FEHA; 3) disability discrimination under the ADA; 4) disability discrimination claim under FEHA; 5) harassment under Title VII; 6) harassment under FEHA; 7) retaliation under FEHA; 8) disability discrimination under FEHA; 9) failure to accommodate under FEHA; 10) failure to engage in interactive process under FEHA; and 11) failure to prevent

1  discrimination under Title VII, the ADA, and FEHA.

2      The City moves for partial summary judgment on all but two claims (counts five and six, for harassment under Title VII and FEHA). The City argues that the claims relating to Plaintiff's termination (in this case, a constructive discharge)[2] must be dismissed for failure to exhaust administrative remedies because Plaintiff's 2015 DFEH Complaint was not timely filed, and the challenged claims fall outside the scope of the 2013 EEOC Charge. Plaintiff counters that she exhausted her administrative remedies because her 2015 DFEH Charge was timely filed, and the challenged claims also fall within the scope of her 2013 EEOC Charge.

## V. LEGAL STANDARD

    A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id.* at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

    To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

---

[2] Plaintiff claims that she was wrongfully terminated because she was forced to resign. This is commonly called a constructive discharge. *See Green v. Brennan*, 136 S. Ct. 1769, 1774 (2016) (constructive discharge occurs where an employee is not fired, but "resigns in the face of intolerable discrimination").

7

## VI. DISCUSSION

### A. **Timeliness of 2015 DFEH Complaint**

The City contends that Plaintiff failed to timely exhaust her administrative remedies because her 2015 DFEH Complaint was not filed within 300 days of the date of her termination as required under Title VII and the ADA, or within one year of the date of her termination as required by the FEHA.

Title VII and the ADA require that a plaintiff exhaust her administrative remedies prior to filing a civil complaint. *See Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002); 42 U.S.C. § 12117(a) (extending Title VII exhaustion requirement to ADA). To exhaust administrative remedies under Title VII and the ADA, a plaintiff must file a charge with the EEOC within 300 days of the alleged unlawful employment practice if the plaintiff "has initially instituted proceedings" with the DFEH, the state agency charged with the authority to grant or seek relief from an unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1). If a plaintiff files a timely charge with the DFEH within 300 days of the alleged unlawful employment practice, that charge is deemed filed with the EEOC pursuant to the agencies' worksharing agreement. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008) (since the plaintiff filed a charge with the DFEH, that charge was deemed filed with the EEOC pursuant to the worksharing agreement between the agencies); *Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010) (plaintiff who files a disability discrimination complaint with a state agency and receives a right-to-sue letter from the state agency does not need to file a separate EEOC complaint and receive a separate EEOC right-to-sue letter to exhaust administrative remedies). The charge will also be timely if it is filed within 300 days with the EEOC, rather than the DFEH. *See Flores v. Merced Irrigation Dist.*, 758 F. Supp. 2d 986, 993 (E.D. Cal. 2010) (under workshare agreement, Title VII's 300 day deadline also applies if charging party initially files with the EEOC rather than DFEH).

The FEHA also imposes an exhaustion requirement on a plaintiff seeking to file a civil action under that act. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001) ("In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative

8

remedies provided by law.") (citation and internal quotation marks omitted); *see also Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996) ("The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA."). To exhaust administrative remedies under the FEHA, a plaintiff must file an administrative complaint with the DFEH within one year of the alleged unlawful employment practice and obtain a notice of right to sue. *See* Cal. Gov't Code § 12960(b) through (d) (setting forth requirements for administrative complaints filed with the DFEH and explaining that no complaint may be filed more than one year from the date of the alleged unlawful employment practice); § 12965(b) (a plaintiff may file a civil action within one year of the date of the right-to-sue notice).

The court finds that Plaintiff's 2015 DFEH Complaint was untimely and thus failed to exhaust her administrative remedies as to the claims raised in it. It is undisputed that Plaintiff gave notice of her resignation on July 28, 2014, effective July 29, 2014. Plaintiff filed her 2015 DFEH Complaint on July 30, 2015, which is more than 300 days after her constructive discharge. Thus, Plaintiff cannot rely on the 2015 DFEH Complaint to exhaust her administrative remedies under Title VII and the ADA. Additionally, since Plaintiff did not file her 2015 DFEH Complaint within one year of the date of her July 29, 2014 termination, she cannot rely on the DFEH charge to exhaust her administrative remedies for her FEHA claims. *See Romano*, 14 Cal. 4th at 493 (explaining that the one year limitation period in which to file administrative complaint under DFEH for wrongful discharge runs from the date of the actual discharge or termination).

Plaintiff argues that her 2015 DFEH Complaint was timely because (1) she communicated with the DFEH on July 29, 2015; and (2) she filed her 2015 DFEH Complaint within one year of August 1, 2015, which is the date of her retirement. Both of these arguments lack merit.

As to Plaintiff's first argument, the record shows that Plaintiff submitted an inquiry to the DFEH on July 29, 2015, but did not file her verified DFEH Complaint until July 30, 2015. *See* July 29, 2015 Letter from DFEH to Plaintiff (Ex. B to Darmagnac Decl.). Plaintiff's July 29, 2015 pre-complaint inquiry is not a substitute for a filed DFEH Complaint. *See* Cal. Gov't Code § 12960(b) (explaining that an aggrieved party may "file with the department a verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or

9

1  employment agency alleged to have committed the unlawful practice complained of"); Blank Pre-
2  Complaint Inquiry form from DFEH website (Ex. A to Johnson Decl.) ("The Pre-Complaint
3  Inquiry is not a filed complaint.").

4  Plaintiff cites *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 405 (2008), but it is factually
5  inapposite. The plaintiff in *Holowecki* never filed an EEOC charge. She argued that her EEOC
6  intake questionnaire, which she submitted along with a verified six-page affidavit, constituted an
7  administrative charge for purposes exhausting her administrative remedies under the Age
8  Discrimination in Employment Act ("ADEA"). As framed by the Supreme Court, *Holowecki*
9  addressed the question "[w]hat is a charge as the ADEA uses that term?" *Id.* at 395. The Court
10 analyzed the ADEA's definition of "charge" by examining the language of the relevant EEOC
11 regulations. *Id.* at 395-396. The Court held that while not every EEOC intake questionnaire
12 constitutes a charge, one could be treated as the equivalent of a charge under certain circumstances
13 such as those presented by Holowecki. *Id.* at 405-06. In this case, Plaintiff completely fails to
14 develop her argument on this point. She contends that her DFEH pre-complaint inquiry
15 constitutes a charge, but makes no attempt to explain how or why. Nor does she address the fact
16 that *Holowecki* was specific to the ADEA, and did not involve the definition of a charge for
17 purposes of the FEHA.

18 As to Plaintiff's second argument, the one year period in which to file a DFEH
19 administrative charge runs from the date of the alleged unlawful termination. *Romano*, 14 Cal. 4th
20 at 493. Plaintiff's alleged constructive discharge indisputably occurred on July 29, 2014. *See* July
21 28, 2014 letter from Plaintiff to Human Resources Dept. of the City (Ex. A to Loomis Decl.);
22 Loomis Decl., ¶ 6; Separation Checklist (Ex. B to Loomis Decl.); The City's Personnel Action
23 Form (Ex. D to Loomis Decl.). Plaintiff does not cite any case to support her position that the
24 filing period runs from the August 1, 2014 effective date of her retirement.

25 Although it is far from clear, Plaintiff also appears to argue that by telling her EEOC
26 investigator in May 2015 that she was forced to resign, she effectively informed the DFEH of her
27 forced resignation, since her 2013 EEOC Charge was dual-filed with the DFEH. *See* Opp'n at 5.
28 This is also meritless. Plaintiff was on clear notice that the DFEH was not investigating the

10

allegations in her 2013 EEOC Charge. *See* DFEH Notice to Complainant and Respondent (Ex. 2 to Wyatt Decl.) ("The EEOC is responsible for processing of this complaint and the DFEH will not be conducting an investigation of the complaint or the investigation.")  Therefore, Plaintiff has no support for this theory.

The City relatedly argues that because Plaintiff's DFEH Complaint was not timely filed within 300 days of the date of her termination, and was not dual-filed with the EEOC, Plaintiff had to obtain a federal right-to-sue notice to exhaust her federal claims relating to her wrongful discharge.  The City is only partially correct.  If Plaintiff had not filed the 2013 EEOC Charge, then she would have had to exhaust her federal claims separately, given that she did not file her 2015 DFEH Complaint within 300 days of her termination.  However, as discussed below, Plaintiff may still argue that the challenged claims have been exhausted because they fall within the scope of the 2013 EEOC Charge.

In conclusion, Plaintiff's 2015 DFEH Complaint was untimely, and therefore cannot serve as the basis for exhaustion of her administrative remedies.

B. **Scope of the 2013 EEOC Charge**

Plaintiff's 2015 DFEH Complaint was untimely.  Therefore, in order to satisfy the administrative exhaustion requirements, Plaintiff must show that the challenged claims fall within the scope of her 2013 EEOC Charge.  The City contends that the challenged claims are not within the scope of the 2013 EEOC Charge because they are not like or reasonably related to the allegations in that charge, which focused on harassment and not wrongful termination.

The scope of a plaintiff's Title VII action depends "'upon the scope of both the EEOC charge and the EEOC investigation.'" *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100–01 (9th Cir. 2002), as amended (Feb. 20, 2002) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).  The court must also examine the scope of the EEOC's actual investigation of the charge. *See EEOC v. Farmer Bros. Co*, 31 F.3d 891, 899 (9th Cir. 1994).

To determine the scope of an EEOC charge, the court must begin by examining the factual allegations in the charge.  *See Freeman*, 291 F.3d at 637 ("[T]he inquiry into whether a claim has been sufficiently exhausted must focus on the factual allegations made in the charge itself . . . .

11

1  [o]nly by engaging in such an inquiry will the actual focus of the administrative charge, and the
2  scope of the claims exhausted, be revealed."). The court must construe the EEOC charge with the
3  "utmost liberality." *B.K.B.*, 276 F.3d at 1100 (quoting *Kaplan v. Int'l All. of Theatrical & Stage*
4  *Emps.*, 525 F.2d 1354, 1359 (9th Cir.1975) *abrogated on other grounds by Laughon v. In"l All. of*
5  *Theatrical Stage Emps.*, 248 F.3d 931 (9th Cir. 2001)); *see also Chung v. Pomona Valley Cmty.*
6  *Hosp.*, 667 F.2d 788, 790 (9th Cir. 1982) (rejecting "overly-restrictive reading" of a plaintiff's
7  EEOC charge and concluding that a plaintiff did not have to expressly spell out a continuing-
8  violation theory to order to exhaust claims alleging a pattern or practice of discrimination).
9  However, "[t]he rule of liberal construction does not suggest that a plaintiff sufficiently exhausts
10 [her] administrative remedies under Title VII by merely mentioning the word 'discrimination' in
11 [her] EEOC charge." *Freeman*, 291 F.3d at 637; *see, e.g., Chew v. City and Cty. of San*
12 *Francisco*, No. 13-cv-05286-MEJ, 2016 WL 631924, at *6-9 (N.D. Cal. Feb. 17, 2016) (finding
13 no exhaustion of plaintiff's claim that he suffered discrimination because he associated with
14 another employee who faced race discrimination, where the plaintiff's EEOC charge made only
15 cursory references to discrimination and/or retaliation).
16     "Allegations of discrimination not included in the plaintiff's administrative charge may not
17 be considered . . . unless the new claims are like or reasonably related to the allegations in the
18 EEOC charge." *B.K.B.*, 276 F.3d at 1100 (internal citations omitted); *Green v. Los Angeles*
19 *Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989). "In determining whether an
20 allegation . . . is like or reasonably related to allegations contained in a previous EEOC Charge,
21 the court inquires whether the original EEOC investigation would have encompassed the
22 additional charges." *B.K.B.*, 276 F.3d at 1101-02. If a plaintiff's civil claims are "consistent with
23 the plaintiff's original theory of the case," then those claims are "reasonably related to the
24 allegations in the charge." *Id.* at 1100. The court may also consider "such factors as the alleged
25 basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of
26 discrimination named in the charge, and any locations at which discrimination is alleged to have
27
28

occurred." *Id.*[3]

Thus, unlawful incidents that occur after the filing of an EEOC charge can still fall within the scope of that charge if the later incidents are like or reasonably related to those described in the charge. For example, in *Sosa*, the plaintiff filed a Title VII action against his employer for discriminating against him on the basis of his national origin. 920 F.2d at 1453. Some of the incidents alleged in the complaint took place before and after the plaintiff filed his EEOC charge and were not included in the charge. *Id*. at 1457. The district court dismissed Plaintiff's complaint as unexhausted as to any incident that was not specifically included in the charge. *Id*. at 1454-56. The Ninth Circuit reversed, finding that all of the incidents in the plaintiff's complaint were "like or reasonably related" to the allegations in the EEOC charge and thus were sufficiently exhausted. *Id*. at 1458. The charge alleged that his employer subjected him to "intimidation, harassment, and disparate treatment with respect to the terms and conditions of employment," and engaged in a "pattern or practice of retaliating" against him for filing discrimination complaints/charges. The court reasoned that an investigation into the charge would have encompassed the additional incidents cited in the complaint. *Id*. at 1457.

Similarly, in *Lyons v. England*, 307 F.3d 1092 (9th Cir. 2002), the Ninth Circuit held that the plaintiff's 1996 EEOC charge encompassed claims relating to the employer's discriminatory failure in 1997 to promote African-Americans to the G-13 level. *Id*. at 1104-05. Plaintiff's EEOC charge alleged that the defendant had "intentionally engaged in the systemic elimination of Black Males from the G-13 and G-14 levels of management" by denying promotions and favorable work-assignments to qualified candidates. *Id*. at 1105. Given the language of the charge, the Ninth Circuit reasoned that an "additional EEOC investigation regarding the 1997 promotions would have been redundant." *Id*. at 1105; *see also EEOC*, 31 F.3d at 899 (holding that an EEOC

---

[3] At the hearing, Plaintiff's counsel stressed that *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718 (1994) and *Okoli v. Lockheed Technical Operations*, 36 Cal. App. 4th 1607 (1995) support Plaintiff's argument that the allegations in her complaint are "like or reasonably related" to the allegations in her 2013 EEOC Charge. It is unclear how these cases support Plaintiff's argument, since they both concern exhaustion under the FEHA. As discussed above, the issue of whether Plaintiff exhausted the various claims in her lawsuit turns on analysis of the scope of the 2013 EEOC Charge, which is analyzed under federal law.

charge alleging discriminatory failure to recall and rehire women following a company-wide layoff necessarily encompassed the claim for discriminatory lay-off, since the "layoff was an integral part" of the alleged discriminatory scheme, and it would have been "necessary for the EEOC to investigate the circumstances" of the plaintiff's layoff); *Leleind v. City & Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008) (finding claims not in a plaintiff's charge were sufficiently exhausted because "such claims could be reasonably expected to grow out of an investigation" by the EEOC).

However, where the factual allegations in the EEOC charge bear no reasonable relationship to the claims in a plaintiff's complaint, would not have reasonably have led to an investigation of those claims, and were not included in the actual EEOC investigation, the Ninth Circuit has dismissed the claims for failure to exhaust administrative remedies. For example, in *Freeman*, the plaintiff's EEOC charge alleged race and sex-based discriminatory conduct in connection with an election for the Faculty Advisory Council. 291 F.3d at 634. However, none of the allegations in plaintiff's subsequent civil action involved the Factual Advisory Council. *Id*. Instead, the allegations in the lawsuit related to class size and student contacts at the school, and the manner in which the defendant handled a dispute over a switch to an eight period school day. *Id*. The Ninth Circuit held that the allegations in the complaint were not like or reasonably related to the allegations in the charge so as to sufficiently exhaust plaintiff's claims, since there was nothing in the language of the charge itself which would have reasonably resulted in an EEOC investigation of those claims. *Id*. at 637.

Similarly, in *Green*, the Ninth Circuit held that the plaintiff had not exhausted her claims that the defendant denied her medical leave and benefits, disseminated poor recommendations, and discharged her on the basis of her race and sex, because her EEOC charge alleged that she was sexually harassed by other employees and denied training and relocation on the basis of her race and sex. "An investigation of incidents which occurred while [the] plaintiff was working would not [have] encompass[ed] her subsequent claims that she was denied medical leave and benefits and ultimately discharged because of her race and sex." 883 F.3d at 1476.

Where new claims are not like or reasonably related to the allegations in a plaintiff's

14

EEOC charge, a plaintiff must then either amend the existing EEOC charge to include those new claims, or file a separate EEOC charge in order to properly exhaust administrative remedies for the new claim. *See Albano v. Schering-Plough Corp.*, 912 F.2d 384, 387 (9th Cir. 1990) ("A claimant's failure to amend [her] charge to include a new claim is essentially the same as a claimant's failure to file an EEOC for the new claim.").

Lastly, in determining the scope of a plaintiff's Title VII action, the court must also examine the EEOC's actual investigation of the charge. *See EEOC*, 31 F.3d at 899 (explaining that "[a] district court's subject matter jurisdiction [also] extends over all allegations of discrimination that either "[fall] within the scope of the EEOC's actual investigation [of the allegations in the charge] or an EEOC investigation which can reasonably be expected to grow out of the charge . . . .").

In examining the EEOC's actual investigation, the court may consider not only what a plaintiff tells the EEOC investigator, but also what the EEOC communicates to the plaintiff about his or her charge. For example, in *Marasco v. Ariz. Bd. Of Regents*, No. CV-12-01750-PHX-FJM, 2013 WL 4029167, at *2 (D. Ariz. Aug. 8, 2013), the district court concluded that plaintiff properly exhausted his retaliation claim because, in addition to the charge itself, the plaintiff told the EEOC investigator on several occasions that he complained to the defendant's human resources department and had asked whether his ethnicity was a factor in his transfer to a new department. The plaintiff also told the EEOC investigator that he felt he was unable to further his career while working for the defendant. The district court found that such statements "could be reasonably interpreted as alleging retaliatory actions" by the defendant, and that an EEOC investigation would have encompassed these allegations. *Id.*; *see also Fuse v. Ariz. Bd. of Regents*, No. CV-07-2351-PHX-FJM, 2009 WL 2707237, at *2 (D. Ariz. Aug. 24, 2009) (finding that the plaintiff's EEOC investigation would have encompassed his racial discrimination claim because his charge alleged that the plaintiff was the only Black lecturer in the group and plaintiff told the EEOC investigator that "although he did not necessarily believe his case to be about race, he wanted to discuss the matter with someone").

In *Wiederhold v. Sears, Roebuck and Co.*, 888 F. Supp. 2d 1065 (D. Ore. 2012), the

plaintiff filed a written charge with the EEOC complaining of the defendant's failure to provide reasonable accommodations for her disability. *Id*. at 1087. After filing the written charge, Plaintiff resigned from her job, and thereupon told her EEOC investigator that she had resigned primarily due to defendant's refusal to accommodate her disability. *Id*. at 1084. The plaintiff filed an action under the ADA and the corresponding Oregon statute, alleging, among other things, that she was constructively discharged due to her disability. *Id*. at 1077. The defendant argued that the plaintiff failed to exhaust her federal wrongful discharge claim because the EEOC did not investigate the claim and such an investigation could not have reasonably been expected to grow out of an investigation of the plaintiff's failure to accommodate claim. *Id*. at 1084. The district court concluded her wrongful discharge claim was exhausted, finding, among other things, that the EEOC knew Plaintiff had resigned, as evidenced by its letter to the plaintiff discussing her resignation. *Id*. at 1087-88.

Applying these principles, the court will begin by construing the factual allegations in the 2013 EEOC Charge with liberality, and will then consider whether the allegations for each claim at issue are like or reasonably related to the allegations in the 2013 EEOC Charge such that a reasonable EEOC investigation of the charge would have encompassed or uncovered those allegations. Lastly, to the extent appropriate, the court will consider what the EEOC actually investigated.

### 1. Wrongful Termination on the Basis of National Origin

The court finds that Plaintiff failed to exhaust any claims alleging wrongful termination on the basis of national origin. The 2013 EEOC Charge describes specific harassment by Gettle, her Japanese supervisor (i.e., that Gettle made disparaging remarks about America's role in World War II). When a plaintiff's charge is "very specific," courts have been reluctant to construe a charge as including additional claims. *See*, *e.g.*, *Rodriguez*, 265 F.3d at 897 (explaining that plaintiff's DFEH charge of ethnic discrimination "was very specific, rendering it especially inappropriate to expand the civil action to include other claims"). There is no basis for expanding the language in the charge regarding national origin-based harassment to encompass allegations of wrongful termination.

16

The court further finds that Plaintiff's allegations of wrongful termination on the basis of national origin are not like or reasonably related to the allegations in her charge. It is unlikely that an investigation of the national origin allegations in the 2013 EEOC Charge would have reasonably uncovered any allegations relating to Plaintiff's termination on that basis.

Lastly, considering what the EEOC actually investigated, Plaintiff asserts that the actual investigation should include the fact that she spoke with the EEOC investigators in May and August 2015, and told them that when she returned to work from her medical/disability leave, the City offered her three positions which required a college degree, refused to waive that requirement in response to a request from her worker's compensation attorney, and thus forced her to retire on July 29, 2014.[4] *See* Wyatt Decl., ¶¶ 5, 7. Nothing in Plaintiff's statements would have suggested to the EEOC that she was complaining about termination on the basis of her national origin.

### 2. Retaliation for Filing 2013 EEOC Charge

Similarly, the court finds that Plaintiff failed to exhaust any claims for termination in retaliation for filing the 2013 EEOC Charge. Obviously, there is no mention of retaliation in the 2013 EEOC Charge, nor does the language of the charge suggest that an investigation of Plaintiff's harassment allegations against one supervisor would have reasonably uncovered allegations about her subsequent termination for filing the 2013 EEOC Charge. Lastly, as to the EEOC's actual investigation, Plaintiff does not mention "retaliation" at all in her alleged conversations with the EEOC investigators in May or August 2015.

### 3. Disability Discrimination and Failure to Accommodate

By contrast, the court finds that Plaintiff has exhausted her claims alleging disability discrimination and failure to provide reasonable accommodation. Although the 2013 EEOC

---

[4] This court finds no merit in the City's argument that it cannot consider evidence of Plaintiff's alleged phone calls with the EEOC investigators because she raises these facts in a self-serving declaration. The Ninth Circuit has held that "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez*, 265 F.3d at 902. Plaintiff's statements to the EEOC investigators are based on her personal knowledge, and provide sufficient detail as to not be considered conclusory. Thus, the court finds it appropriate to consider the statements in Plaintiff's declaration about what she told the EEOC investigators as part of its analysis of the EEOC's actual investigation of her charge.

17

Charge obviously does not discuss her 2014 termination, it alleges that Plaintiff's supervisor said that she was "tired" of accommodating Plaintiff's disability. Liberally construed, the charge could encompass allegations that the City similarly failed to accommodate Plaintiff in refusing to waive the college degree requirement for the three positions that it offered her upon her return from medical leave. Compl. at ¶¶ 31, 32, 36 and 38. Plaintiff's theory in her 2013 EEOC Charge and in her complaint is the same, i.e., that she suffered discrimination based on her disability, and that Defendants failed to provide reasonable accommodations. For the same reasons, it is likely that a reasonable investigation of Plaintiff's disability-related allegations in the 2013 EEOC Charge would have uncovered allegations of the City's subsequent failure to accommodate Plaintiff upon her return from medical leave, resulting in Plaintiff's constructive discharge.

Lastly, considering the scope of the actual investigation, Plaintiff asserts that she told the EEOC investigators in May and August 2015 that the City refused to waive the college degree requirement, and forced her to retire.

### 4. Failure to Prevent Discrimination

The court also finds that Plaintiff exhausted her claims alleging a failure to prevent discrimination on the basis of disability. The allegation in the complaint that the City failed to take steps to prevent further harassment by Gettle, *see* Compl. at ¶ 42, is like or reasonably related to the allegation in the charge that Plaintiff reported the ongoing harassment by her supervisor to the Human Resources department, "to no avail." 2013 EEOC Charge (Ex. 1 to Compl.); *see also Wise v. Cty. of Alameda*, No. 14-CV-01205-JSC, 2014 WL 2854534, at *5 (N.D. Cal. June 20, 2014) (finding plaintiff's EEOC charge, dual-filed with the DFEH, sufficiently exhausted claim for failure to prevent discrimination claim under FEHA because the EEOC charge described ongoing discrimination and harassment, and alleged that the plaintiff made multiple complaints about the behavior, but, to date, no action had been taken).

### 5. Failure to Engage in Interactive Process

While Plaintiff is only alleging that the City failed to engage in the interactive process as a matter of state law, *see* Cal Gov't Code § 12940(m), there is a federal analog under the ADA. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (holding that "the interactive process

is a mandatory rather than a permissive obligation on the part of employers under the ADA and that this obligation is triggered by an employee or an employee's representative giving notice of the employee's disability and the desire for accommodation"), *overruled on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also Tsuji v. Kamehameha Sch.*, 154 F. Supp. 3d 964, 978 (D. Haw. 2015) (explaining that there is no stand-alone claim under the ADA for an employer's failure to engage in the interactive process, and that the liability imposed on employers who fail to engage in the interactive process in good faith is that "imposed by the statute if a reasonable accommodation would have been possible") (discussing *Barnett*). Thus, it is appropriate for this court to consider whether the scope of the 2013 EEOC Charge encompasses this claim.

The court finds that Plaintiff exhausted her claims alleging that the City failed to engage Plaintiff in the interactive process for the following reasons. Although nothing in the specific language of the 2013 EEOC Charge addresses a failure to engage in the interactive process, the charge states that Gettle complained of being tired of accommodating Plaintiff's disability. Construing this language with the utmost liberality, as the court must, the allegation that Plaintiff's supervisor was tired of accommodating Plaintiff's disability encompasses the allegation that the City subsequently failed to engage in the interactive process with Plaintiff upon her return from medical leave to identify reasonable accommodations for her disability, and ultimately failed to provide reasonable accommodation.

Similarly, it is likely that a reasonable investigation of the allegation in the charge that Gettle was tired of accommodating Plaintiff's disability would have uncovered later allegations that the City later failed to engage in the interactive process with Plaintiff to identify reasonable accommodations in response to her request to waive the college degree requirements for the available clerical positions, and refused to provide such reasonable accommodations in violation the ADA and state law. *See* Cal. Gov't Code § 12940(n); *see Barnett*, 228 F.3d at 1114; *see also Tsuji*, 154 F. Supp. 3d at 978.

Lastly, considering the EEOC's actual investigation, Plaintiff asserts that she told the EEOC investigators in May and August August 2015 that the City refused to waive the college

degree requirement and forced her to retire.

At the hearing, the City stressed that the EEOC did not actually investigate any claims for wrongful termination in its investigation of the 2013 EEOC Charge, and so to find exhaustion of the termination claims would subvert the purpose of administrative exhaustion, which is to provide notice to the employer of the charges prior to the filing of a lawsuit. The Ninth Circuit has spoken on the issue and explained that such an argument is "misplaced":

> [The employer's] reliance on the notice function is misplaced. We view the EEOC charge primarily as an impetus to EEOC investigation and conciliation, not as a pleading giving notice to the employer. . . . Further, even recognizing the role of the EEOC charge in placing an employer on notice of the claims against it, the claimant is not responsible for the absence of notice in these circumstances. It is the EEOC, not the claimant, who is responsible for notifying the employer of the claims alleged in the EEOC charge.

*Albano*, 912 F.2d at 388.

### VII. CONCLUSION

For the foregoing reasons, the City's motion for partial summary judgment is granted in part and denied in part. Plaintiff's claims for termination based on national original discrimination and for retaliation are dismissed with prejudice for failure to exhaust. Plaintiff's application to respond to the new matter in the City's Reply is denied as moot. [Docket No. 41].

**IT IS SO ORDERED.**

Dated: February 13, 2017



Donna M. Ryu
United States Magistrate Judge